UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARIE FRITZINGER,<br><br>          Plaintiff,<br><br>          vs.<br><br>ANGIE'S LIST, INC.,<br><br>          Defendant. | CLASS ACTION<br><br>**1 : 12 -v- 1118** JMS -DML<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

### Introduction

1.     Plaintiff Marie Fritzinger ("Plaintiff"), by her attorneys, brings this action as a class action for herself and on behalf of all others similarly situated, against Angie's List, Inc. ("Angie's List").

2.     Defendant Angie's List is an internet-based company that provides its members with a forum to post and access reviews of contractors and other service providers. Angie's List also publishes its own content regarding the business practices of contractors.

3.     Angie's List, in its 2011 initial public offering filing, touted its "unwavering commitment to placing the interests of the consumer first[.]" However, Angie's List has failed to abide by this commitment with respect to its own membership practices.

4.     Plaintiff seeks monetary relief for Angie's List's systematic and repeated breach of its membership agreement ("Membership Agreement"), and for Angie's List's fraudulent and deceptive conduct relating to the fees it collects through the automatic renewal of its members' subscriptions.

## Summary of Allegations

5.      Angie's List members contract to pay Angie's List a "Membership Fee" in order to obtain access to the Angie's List service. Accordingly, Angie's List publishes its "Membership Fee" schedules on its website for review by all prospective members.

6.      When a member enrolls in Angie's List, the Defendant Angie's List quotes that person the applicable "Membership Fee" options.

7.      Enrolling members also must agree to automatic renewal of their Angie's List memberships, and must allow Angie's List to keep a valid credit or debit card number on file to facilitate that automatic renewal.

8.      The Angie's List Membership Agreement provides that the automatic renewal, like the initial enrollment, is to be billed at "the Membership Fee."

9.      In breach of the plain language of its Membership Agreement, Angie's List instead automatically renews its members pursuant to a distinct – and more costly – "Membership Renewal Fee."

10.      In this manner, Angie's List has breached its own membership contract over one million times.

11.      Nevertheless, Angie's List has continued to deceive and defraud its members and prospective members through public statements and electronic transmissions conveying the false impression that new and renewing members are charged pursuant to an identical membership fee schedule. In fact, the so-called Membership Renewal Fee is not identified in the Membership Agreement or in any of Angie's List's numerous publications regarding its membership fees.

12.      Angie's List has also been unjustly enriched by abusing its automatic renewal authority to take further advantage of longer-tenured members.

2

13.     In 2010, Angie's List made a substantial change to its business model in approximately thirty of its most mature markets. Angie's List implemented a membership structure in those markets which provided new members with the option of limiting their membership to any one of three categories of reviews: home contractors, healthcare providers or auto service providers. Angie's List also created an "Angie's List Bundle" subscription that, for a premium price, provided the member with access to all three categories.

14.     Angie's List did not notify its existing customers of this change to its membership offerings. Instead, Angie's List abused its automatic renewal policy and "renewed" its existing members – many of whom had joined before Angie's List offered health or auto service reviews – at the highest-cost "Bundle" membership plan.

15.     Angie's List never provided notice to its existing members that it was enrolling them in the newly-created "Bundle" membership, and never obtained the consent or agreement of its existing members to pay a premium rate for this "Bundle" of services.

16.     Thus, Angie's List has been unjustly enriched through its collection of unauthorized "Bundle" membership fees from Plaintiff and other members who had joined Angie's List prior to 2010.

## THE PARTIES

17.     Plaintiff Marie Fritzinger is a resident of Philadelphia, Pennsylvania. She has been a paying member of Angie's List since on or about May 12, 2007.

18.     Beginning on July 1, 2008, and occurring on each subsequent July 1 through the present, Plaintiff's annual Angie's List membership was automatically renewed at a fee higher than the "Membership Fee" for which she contracted.

3

19.     In addition, beginning on or about July 1, 2010, and continuing until July 2012, Plaintiff's subscription was automatically renewed by Angie's List at the "Angie's List Bundle" membership level without notice from Angie's List of this change in membership plan, and without Plaintiff authorizing this change to her membership plan.

20.     Defendant Angie's List, Inc. is a Delaware corporation with its principal place of business at 1030 E. Washington Street, Indianapolis, Indiana 46202.

21.     Angie's List made an initial public offering on November 17, 2011; its stock is traded on the NASDAQ exchange.

22.     Angie's List reported revenue from membership fees totaling $33,815,000 for calendar year 2011.  Total Angie's List revenue for 2011 was $90,043,000.

## JURISDICTION AND VENUE

23.     The Court has jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (i) Plaintiff Fritzinger is a citizen of the Commonwealth of Pennsylvania, (ii) Defendant Angie's List is, pursuant to 28 U.S.C. § 1332(c)(1), deemed to be a citizen of the State of Delaware and of the State of Indiana, and (iii) the amount in controversy for Plaintiff and the members of the Class defined below exceeds, on information and belief, the sum of $5 million, exclusive of interest and costs.

24.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391(b)(1), (2), and (3), and 28 U.S.C. § 1391(c), in that Defendant Angie's List is deemed to reside in this District, a substantial part of the events or omissions giving rise to the claim occurred in this District, and Defendant Angie's List is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### A. The Angie's List Business Model

25.     Angie's List is an internet-based company that provides a forum for members to post and read reviews of home contractors and other service providers.

26.     Angie's List launched its website, www.angieslist.com, in 1999.

27.     Membership in Angie's List is available on a monthly, annual and multi-year basis.

28.     Angie's List memberships are limited by geographic market. Thus, a prospective member selects a city or region and, by joining, obtains access to reviews for only that city or region.

29.     Since 2010, as detailed below, Angie's List has enabled members in approximately 30 geographic markets to limit their memberships to specific categories of reviews or, in the alternative, utilize a "Bundle" of all available service reviews.

30.     Angie's List made an initial public offering in November 2011.

31.     Angie's List has aggressively sought to grow its membership in the period preceding its IPO and in the months since. Indeed, Angie's List added over 500,000 new members in the first half of 2012 at a marketing cost of over $40 million.

32.     In addition, Angie's List expends substantial resources to contact existing members. Angie's List sends multiple emails each month to encourage members to post reviews and to encourage recruitment of non-members.

33.     Angie's List also publishes a monthly magazine, tailored to each specific geographic market, in which Angie's List identifies good and bad contractors and warns of unscrupulous business practices.

34.    Angie's List presently claims over 1.4 million members in 205 geographic markets spanning all 50 states.

35.    For 2011, Angie's List reported a membership renewal rate of 78%.

**B. Joining Angie's List**

36.    Angie's List memberships are made available through Defendant's website. The website publishes Membership Fees for all geographic markets and a frequently asked questions ("FAQ") page which includes information concerning membership fees.

37.    All Angie's List members, no matter the geographic market, length of membership, or scope of services chosen, join Angie's List pursuant to the single Angie's List Membership Agreement. The current Membership Agreement, effective April 25, 2012, is attached hereto as Exhibit A.

38.    The Membership Agreement makes explicit that enrolling members pay the "Membership Fee," which is a defined term, to join Angie's List:

> Angie's List will charge You a membership fee in order to provide the Service (the "Membership Fee"). You acknowledge that Angie's List reserves the right, at any time, to modify its Membership Fees and billing methods. Membership Fees for access to the Service may be made either on a monthly or annual basis. Once a membership is purchased, you will be granted access to the Service for one subscription within a market selected by You.

39.    Accordingly, Angie's List publishes on its website the "Membership Fee" for each available market. A person seeking to ascertain the "Membership Fee" for a given market can access this information from the Angie's List website simply by inputting the zip code for the desired market.

40.    The "Membership Fee" information for a particular geographic market is published in the form of a chart (the "Membership Fee Schedule").

41.     The Membership Fee Schedule for each market contains a header that states:

"Membership Fees for our [_____] Market."  The Membership Fee Schedule for Philadelphia,

PA as of August 1, 2012 is attached hereto as Exhibit B.

42.     Consistent with the Membership Agreement, persons enrolling in Angie's List are

billed a membership fee that is calculated pursuant to the prevailing Membership Fee Schedule.

### C. Angie's List: "The Convenience of Automatic Renewal"

43.     As Angie's List notes on its website, all memberships "come with the conven-

ience of automatic renewal."  Pursuant to the Membership Agreement, "[u]nless such member-

ship plan is cancelled or terminated as provided below, all membership plans will be automati-

cally renewed upon the terms set forth below."

44.     The Angie's List Membership Agreement membership renewal terms are as fol-

lows:

**Monthly Payment Plan:**
**If you select the monthly payment plan, each month Angie's List will automatically renew
Your membership on a month-to-month basis at the Membership Fee (as such Membership
Fee may be modified as provided above) using the credit card, DEBIT CARD OR OTHER
PAYMENT information on file with Angie's List.** Each monthly renewal payment will take
place on or about Your expiration date. If the renewal of Your monthly membership fails for any
reason, we will attempt to process Your renewal for a period up to one hundred eighty (180) days
in accordance with our standard renewal practices then in effect (which may be modified from
time to time by Angie's List). Except as otherwise required by applicable law, You agree that
Angie's List will not provide You with any notices prior to each monthly renewal payment.

**Annual Payment Plan:**
**If you select the annual payment plan, Angie's List will automatically renew Your annual membership for one year at the Membership Fee for annual memberships (as such membership fee may be modified as provided above) using the credit card, debit card OR OTHER PAYMENT information on file with Angie's List.** Such annual renewal payment will take place on or about the 1st of the calendar month in the month in which Your annual membership expires. If the renewal of Your annual membership fails for any reason, we will attempt to process Your renewal for a period up to one hundred eighty (180) days in accordance with our standard renewal practices then in effect (which may be modified from time to time by Angie's List). Except as otherwise required by applicable law, You agree that Angie's List will not provide You with any notices prior to each annual renewal payment.

45.    The Angie's List Membership Agreement therefore provides that memberships are to be renewed automatically at "the Membership Fee."

46.    The "Membership Fee," as established earlier in the Angie's List Membership Agreement, is the contractual term which Angie's List defines as the fee charged to members to join Angie's List.

47.    Thus, Angie's List members have contracted to have their memberships automatically renewed pursuant to the same Membership Fee Schedule as newly enrolling members in their geographic market.

48.    Angie's List has reserved the right to "modify its Membership Fees and billing methods." However, Angie's List has not contracted with its members to charge renewing members a fee greater than the "Membership Fee."

49.    The plain language of the Angie's List Membership Agreement is reinforced by the Membership Fee Schedules posted on the Angie's List website. The Membership Fee Schedules identify a "discount" available to a subscriber who selects an annual or multi-year subscription, rather than a monthly subscription. In calculating the "discount" for an annual membership, Angie's List compares the Membership Fee for an annual membership with the cost of paying the posted monthly Membership Fee twelve times (once to initiate monthly mem-

8

bership and eleven monthly renewals).  Thus, an annual Membership Fee of $40 would generate a 33% discount over a monthly Membership Fee of $5 ($60 annually).   The basis of the "discount" advertised by Angie's List is that a monthly subscriber will be charged the published "Membership Fee" each time the monthly membership is renewed.

50.     Similarly, the Angie's List FAQs [Frequently Asked Questions] – to which enrolling members are directed if they have questions about membership fees – confirm that there is a single Membership Fee schedule for each geographic market.  Under the question, "Is there a membership fee?," Angie's List represents on its website:

> Yes, consumers pay a membership fee to join Angie's List. . . . In some cities, where we're still building the List, consumers can join for free; . . . Once the List has adequately grown and **a membership fee** has been determined, members have the option . . . **to renew at the regular membership price.**

(Bold and underline added).

51.     The "Is there a membership fee" FAQ response concludes with a link to allow the reader to "View membership fees here."  That link directs prospective members to the Membership Fee Schedule.

52.     Angie's List thus represents through its website that a single membership fee schedule prevails, and that each member is to be renewed automatically at the applicable Membership Fee.

D. **Angie's List Breaches its Membership Agreement**

53.     In reality, Angie's List does not renew its members at the contractually-mandated Membership Fee.

54.     Angie's List has breached its Membership Agreement contract with Plaintiff and Class members by renewing their Angie's List memberships at a cost that is greater than "the Membership Fee" for which they contracted.

55. The "discount" identified in the Membership Fee Schedule falsely represents that memberships will be renewed automatically at the published Membership Fee, as does the statement on the Angie's List website describing the determination of "a membership fee" for each market.

56. On information and belief, Angie's List instead automatically renews its members at a so-called "Membership Renewal Fee" for each geographic market.

57. The "Membership Renewal Fee" is not identified in the Membership Agreement.

58. There is no mention of a distinct "Membership Renewal Fee" on Defendant's extensive website.

59. The "Membership Renewal Fee" is not identified in Defendant's FAQ regarding membership fees.

60. Defendant does not publish a publically available schedule identifying the so-called "Membership Renewal Fees" ("Membership Renewal Fee Schedule").

61. The Membership Renewal Fee Schedule is not accessible to persons who have not already joined Angie's List.

62. Thus, Angie's List conceals from prospective members all information regarding the Membership Renewal Fee.

63. Angie's List members who have already enrolled may be routed to the Membership Renewal Fee Schedule, rather than the Membership Fee Schedule, if they first sign in to their account and then inquire into the full schedule of membership fees for their market. Members who do not sign in to their accounts are still shown the Membership Fee Schedule.

64. The Membership Renewal Fee Schedule for a given geographic market is identical to the Membership Fee Schedule, except that it lists higher fees for all membership plans and

durations.  The August 1, 2012 Membership Renewal Fee Schedule for Philadelphia, PA is attached hereto as Exhibit C.

65.     The Membership Renewal Fee Schedule is an attempt by Angie's List to confer validity on a predatory pricing plan that is contrary to the plain language of the Membership Agreement and contrary to Angie's List's own publications concerning membership fees.

66.     In breach of the Angie's List Membership Agreement, Angie's List has renewed its members' subscriptions, including that of Plaintiff, pursuant to the Membership Renewal Fee Schedule rather than the less costly Membership Fee Schedule.  Angie's List has thus breached its Membership Agreement on over one million membership renewals, based on its reported membership renewal statistics.

67.     Angie's List has so effectively concealed information about its "Membership Renewal Fee" that The New York Times, in a detailed March 2012 profile piece on Angie's List, inaccurately reported the range of Angie's List membership fees.  The Times columnist, an Angie's List member himself, reported that annual membership fees reached a maximum of $62.40. In fact, Angie's List had been wrongly charging its renewing members with annual fees in excess of $70 since at least 2010.

68.     Angie's List's misleading and deceptive conduct has prevented Plaintiff and members of the Class from discovering the failure by Angie's List to abide by its Membership Agreement.

### E. The Evolving Angie's List Business Model

69.     Angie's List, further straying from its commitment to protecting the interests of consumers, has also taken advantage of its longer-tenured members following a 2010 change to its business model.

70.     Until 2008, Angie's List limited its content to reviews of home services contractors, including plumbers, HVAC contractors, roofers and painters.  Members joined "Angie's List," and obtained access to all such reviews for their selected geographic area.

71.     In March 2008, Angie's List began including reviews of medical professionals in addition to the traditional home repair contractors.

72.     Even with the addition of health services reviews, members continued to join and belong to "Angie's List," which was the sole form of membership available.  Members were not billed an incremental amount for the new health content.

73.     In 2009, Angie's List began including Classic Car service providers in certain markets.  Still, "Angie's List" remained the sole membership offered, and members were not billed an incremental amount for the new automobile-related content.

74.     In 2010, Angie's List substantially modified its business model in its thirty most mature markets.  Rather than maintaining a single "Angie's List" subscription, Angie's List created multiple subscription options in those markets.  Angie's List has referred to this change as "unbundling."

75.     Pursuant to this change, new Angie's List members were offered the option to join "Angie's List," which included home contractor services, "Angie's List Health & Wellness," which included medical service providers, or "Angie's List Classic Cars," which included automotive repair service providers.

76.     In addition, new members could select an "Angie's List Bundle" membership plan, which provided access to Angie's List, Angie's List Health, and Angie's List Classic Car.

77.     The Angie's List Bundle membership plan was priced higher than any individual service plan, but cheaper than the cost of all three plans together.

**F.  Angie's List Preyed on its Existing Members**

78.     Angie's List failed to notify its existing customers (the "Pre-Existing Members") about its substantial change in subscription offerings, despite having maintained a steady flow of email and mail correspondence to its members since 2010.

79.     Instead, after adopting this entirely new subscription model in its mature markets, Angie's List abused its automatic renewal authority by automatically "renewing" its Pre-Existing Members in those markets at the premium "Angie's List Bundle" membership level.  This conduct resulted in Angie's List being unjustly enriched at the expense of its longer-term members.

80.     With regard to automatic membership renewal, the Membership Agreement states that "[t]he terms of such monthly, annual and Additional List membership plans are listed below. Unless such membership plan is cancelled or terminated as provided below, all membership plans will be automatically renewed upon the terms set forth below." (Emphasis added).  The Membership Agreement proceeds to recite the terms of renewal, which are quoted above at ¶ 44.

81.     Prior to Defendant's change to its membership offerings, no Pre-Existing Member had enrolled in an Angie's List Bundle membership plan.  Indeed, the Angie's List Bundle membership did not exist at the time that Pre-Existing Members enrolled in Angie's List.  The only membership plan available prior to 2010 was "Angie's List."

82.     The Membership Agreement, even since the 2010 change to the Angie's List business model, has made no reference to an "Angie's List Bundle" membership plan.

83.     Nevertheless, after Angie's List dramatically changed its membership offerings in certain markets, it unilaterally decided to, and did, "renew" the memberships of Pre-Existing Members in those markets at the Membership [Renewal] Fee for the Angie's List Bundle membership plan.

84.     This action was contrary to the language of the Membership Agreement, which permitted Angie's List to automatically renew members only in a membership plan in which they had previously enrolled.

85.     Plaintiff and all Pre-Existing Members who joined Angie's List prior to March 2008 had subscribed at a time when Angie's List did not even offer reviews of health service providers. Yet, beginning in 2010, those members who had joined Angie's List prior to March 2008 were automatically renewed in a Bundle membership plan – which included payment for access to Angie's List Health.

86.     Similarly, Pre-Existing Members whose memberships pre-dated 2009 had subscribed prior to the inclusion of car service reviews in certain markets.  Yet, beginning in 2010, those members who had joined Angie's List in those markets prior to 2009 were automatically renewed in a Bundle membership plan – which included payment for access to Angie's List Car Care.

87.     As of 2010, the Angie's List Membership Agreement provided that, "[o]nce a membership is purchased, you will be granted access to the Service for <u>one subscription</u> [*i.e.*, Angie's List, Angie's List Health, Angie's List Classic Car] within a market selected by You. You may purchase access to additional subscriptions within a market ('Additional Lists') on the terms and subject to the conditions set forth below." (Emphasis added.).

88.     In addition, the Angie's List Membership Agreement provided that, "[u]pon pur-
chase of a membership, the initial subscription selected by You is considered Your 'primary'
subscription. You may purchase access to additional subscriptions through your membership by
using the Additional List feature located on the website."

89.     Pre-Existing Members were not provided with the opportunity to "select" a "pri-
mary subscription" upon purchase of a membership. Such a selection was impossible because
Angie's List offered only a single "Angie's List" subscription prior to 2010.

90.     Pre-Existing Members were also not provided with the opportunity to "select" a
"primary subscription" at the time that Angie's List changed its membership options.

91.     Angie's List did not wait to see whether Pre-Existing Members opted to "pur-
chase access to additional subscriptions" before renewing those members at the more costly
"Bundle" plan.

92.     Instead, immediately upon changing its membership offerings in a given market,
Angie's List began renewing its Pre-Existing Members for the premium Angie's List Bundle
membership plan.

93.     The Membership Agreement also provides that when members received an offer
to access any Angie's List subscription for free, "Angie's List will provide you notice via email
prior to renewing the Additional List at the Membership Fee . . . using the . . . payment infor-
mation on file with Angie's List."

94.     By contrast, when Angie's List sought to charge its Pre-Existing Members at a
premium fee for access to a newly-created "Bundle" subscription, Angie's List failed to provide
email notice prior to automatically renewing the Pre-Existing Members using their payment in-
formation on file.

95.     As a consequence of Defendant's actions beginning in 2010 to automatically re-
new Pre-Existing Members at the highest cost Angie's List Bundle membership, Plaintiff and
members of the "Pre-Existing Member Subclass" have been harmed.

96.     Angie's List has been unjustly enriched by its conduct with respect to the renewal
of Pre-Existing Members' subscriptions from 2010 to the present.

### Class Action Allegations

97.     Plaintiff brings this action for herself and on behalf of a class and subclass.

98.     The Class is defined as:

> All current and former members of Angie's List whose membership was
> renewed by Angie's List between August 14, 2006 and the present ("Class
> Period").

99.     The Pre-Existing Member Subclass ("Subclass") is defined as:

> All current and former Angie's List members in those markets in which
> Angie's List has "unbundled" its membership offerings, (i) whose mem-
> bership pre-dated that unbundling, and (ii) whose membership was auto-
> matically renewed at the Angie's List Bundle membership level.

100.    Excluded from the Class and Subclass are all officers, directors, employees, and
agents of Angie's List or of any of its affiliates, and the members of the households of any such
individuals.

101.    The Class and Subclass are so numerous that joinder of all members would be
impracticable, as required by Fed. R. Civ. P. 23(a)(1).

102.    There are questions of law or fact common to all members of the Class and Sub-
class, as required by Fed. R. Civ. P. 23(a)(2).

103.    The Angie's List Membership Agreement provides that the claims of the Plaintiff
and all members of the Class and Subclass are governed by the laws of the State of Indiana.

104.    Questions of law or fact common to all members of the Class include, among others:

    a.    Whether Angie's List contracted with members to renew their memberships at the "Membership Fee" rate;

    b.    Whether Angie's List maintained a policy or practice of renewing its memberships at a fee higher than the Membership Fee specified in its Membership Agreement;

    c.    Whether, under the laws of the State of Indiana, Angie's List breached its Membership Agreement by charging renewing members a higher fee than was provided for in the Membership Agreement;

    d.    Whether Angie's List disseminated to the public an advertisement that it knew to be false, misleading, or deceptive, with the intent to promote the sale of memberships and membership renewals, in contravention of Indiana Code § 35-43-5-3.

    e.    Whether Angie's List disseminated to the public an advertisement that Angie's List knew to be false, misleading, or deceptive, in violation of Indiana Code § 35-43-5-3.

    f.    Whether Angie's List misapplied property entrusted to it by its members in a manner that Angie's List knew involved substantial risk of detriment to those members, in violation of Indiana Code § 35-43-5-3.

    g.    Whether, under the law of the State of Indiana, Angie's List was unjustly enriched by excessive renewal fee payments charged to Class members;

    h.    The proper measure of damages; and

i.     Whether, and if so to what extent, Plaintiff and the Class are entitled to up to three times their actual damages, as well as a reasonable attorney's fee, as provided by Indiana Code § 34-24-3-1.

105.    Questions of law or fact common to all members of the Pre-Existing Member Subclass include, among others:

a.     Whether, under the laws of the State of Indiana, Angie's List breached its Membership Agreement by renewing Pre-Existing Members at the "Angie's List Bundle" membership plan without providing notice to those members and without receiving consent or approval from those members;

b.     Whether, under the laws of the State of Indiana, Angie's List was unjustly enriched by renewal fee payments charged to Subclass members at the "Angie's List Bundle" membership level;

c.     Whether Angie's List misapplied property entrusted to it by its members in a manner that Angie's List knew involved substantial risk of detriment to those members, in violation of Indiana Code § 35-43-5-3.

d.     The proper measure of damages; and

e.     Whether, and if so to what extent, Plaintiff and the Class are entitled to up to three times their actual damages, as well as a reasonable attorney's fee, as provided by Indiana Code § 34-24-3-1.

106.    Plaintiff's claims are typical of the claims of the Class and Subclass, as required by Fed. R. Civ. P. 23(a)(3).

107.    Plaintiff will fairly and adequately protect the interest of the Class and Subclass, as required by Fed. R. Civ. P. 23(a)(4). Plaintiff has the same interests in recovery as do the

Class and Subclass, and she is represented by counsel who are experienced in bringing and pursuing class-action and other complex litigation.

108. This suit is properly maintained as a class action under Fed. R. Civ. P. 23(b)(3).

109. The questions of law or fact common to the Class predominate over issues affecting only individual Class members, as required by Fed. R. Civ. P. 23(b)(3).

110. A class action is superior to other means for resolution of the matter, as required by Fed. R. Civ. P. 23(b)(3). The prosecution of individual claims would impose an unnecessary burden on the judiciary and impose a substantial risk that many class members would refrain from pursuing their rights because the amounts involved may not be sufficient to enable them to retain counsel on a contingency, and the costs of individually retained counsel may equal or exceed the individual recovery.

111. Plaintiff does not anticipate any extraordinary difficulties in maintaining this action as a class action.

### Fraudulent Concealment

112. Throughout the Class Period, Defendant intended to and did affirmatively and fraudulently conceal its wrongful conduct from Plaintiff and other members of the Class and Subclass.

113. Plaintiff and members of the Class and Subclass could not have discovered the wrongful conduct alleged herein by the exercise of reasonable due diligence, because of the deceptive practices and techniques of secrecy employed by Defendant to avoid detection of and affirmatively conceal its actions.

114.    Based on the foregoing, Plaintiff and members of the Class and Subclass were un-aware that Angie's List was failing to abide by the terms of its Membership Agreement and that Angie's List was deceiving them in order to reap economic benefits as alleged in this Complaint.

### COUNT ONE
### Breach of Contract

115.    Plaintiff incorporates herein the allegations of ¶¶ 1-114 above.

116.    Plaintiff asserts this Count One for herself and on behalf of the members of the Class.

117.    Plaintiff and Class members have entered into a contract with Defendant Angie's List in the form of the Membership Agreement.

118.    Pursuant to the Membership Agreement, Plaintiff and Class members have con-tracted for Angie's List to automatically renew their memberships "at the Membership Fee."

119.    The Membership Fee is a contractual term defined as the fee charged to join An-gie's List.

120.    The prevailing Angie's List Membership Fees for each geographic market are published on the Angie's List website.

121.    Angie's List systematically breached the Membership Agreement as to Plaintiff and Class members by automatically renewing their memberships at a fee that is higher than the Membership Fee.

122.    Angie's List's breach of the Membership Agreement commenced no later than August 14, 2006 and has continued to the present.

123.    Plaintiff and the members of the Class have been injured as a direct consequence of Angie's List's breach of contract, to the extent each paid more to renew their memberships

than the prevailing Membership Fee at the time of such renewal, together with interest thereon from the date of the breach.

## COUNT TWO
### Deception - IC § 34-24-3-1

124.   Plaintiff incorporates herein the allegations of ¶¶ 1-123 above.

125.   Plaintiff asserts this Count Two for herself and on behalf of the members of the Class.

126.   Defendant knowingly and intentionally made the following false and misleading statements:

    a.   In the Membership Agreement, Angie's List stated that memberships will be renewed "at the Membership Fee." Angie's List made this statement while knowing that it intended to charge renewing members a fee that was higher than the Membership Fee.

    b.   In its FAQs, Angie's List stated that, with respect to new markets, "Once the List has adequately grown and a membership fee has been determined, members have the option . . . to renew at the regular membership price." Angie's List made that misleading statement with full knowledge that its practice was not to determine "a membership fee," and with full knowledge that it did not offer a single "regular membership price."   To the contrary, Defendant charged one membership fee for new members and a distinct, higher renewal fee for renewing members.

    c.   Angie's List stated, in its Membership Fee Schedule, that annual and multi-year subscriptions represent a certain discount over monthly subscriptions. With respect to the annual subscription discount, Angie's List misleadingly

stated that the discount could be determined by comparing the annual Membership Fee against the monthly Membership Fee as multiplied 12 times. The calculated discount thus falsely stated that membership renewal would take place at the Membership Fee. Angie's List performed the same "discount" calculation with respect to multi-year memberships. Angie's List knew that its practice was to renew its members at a higher fee level.

127.    Angie's List made these statements with the intent to obtain property from members and prospective members in the form of membership fees.

128.    Angie's List also disseminated to the public an advertisement that Angie's List knew was false, misleading, and deceptive.

129.    On its website, Angie's List sets forth information on membership fees (quoted at Paragraphs 50-51 above) as part of an advertisement which includes a statement about membership fees and a link to "View membership fees here." The "View membership fees here" link directs prospective members to a page where they may input the zip code of their desired geographic market. Angie's List then publishes the Membership Fee Schedule for that zip code.

130.    Together, the "Is there a membership fee?" statement and the Membership Fee Schedule accessed from the link at the bottom of that statement constitute a deceptive advertisement.

131.    This deceptive advertisement sought to encourage prospective members to join Angie's List subject to automatic renewal, and identified a single Membership Fee Schedule which, it explained, would govern payment of all membership fees.

132.    Defendant's advertisement thus omitted the highly material fact that Angie's List automatically renews its memberships pursuant to an alternative and more costly fee schedule than the Membership Fee Schedule published on the website.

133.    Angie's List disseminated this deceptive advertisement with the intent to promote the purchase of Angie's List memberships and subsequent renewals.

134.    Angie's List has also misapplied entrusted property – the credit and debit cards of its members – in a manner that Angie's List knew involved substantial risk of detriment to the owner of the cards.

135.    Upon enrollment, Angie's List members were required to provide Angie's List with information regarding their valid payment accounts, most commonly in the form of credit cards or debit cards, in order to enable the automatic renewal of their memberships.

136.    Angie's List subsequently misapplied the credit cards, debit cards and other payment accounts belonging to its members when it charged to those accounts renewal fees that exceeded the Membership Fee which members had agreed to pay upon enrollment.

137.    Angie's List knew that this misapplication of the entrusted property involved a substantial risk of detriment to the cardholders, who would pay an inflated fee and would have to expend time and resources to recover funds impermissibly taken by Angie's List.

138.    The three acts of deception detailed above are in violation of IC § 35-43-5-3.

139.    Plaintiff and Class members have suffered a pecuniary loss, in the form of payment of membership renewal fees in excess of the prevailing Membership Fee, as a result of the deception carried out by Angie's List.

140.    Accordingly, pursuant to IC § 34-24-3-1, Angie's List is liable to Plaintiff and members of the Class for, inter alia: an amount that is three times the actual damages incurred by

23

Plaintiff and the Class members; the costs of the action; a reasonable attorney's fee; expenses incurred by Plaintiff and Class members in order to obtain and recover a judgment against Angie's List; and all other reasonable costs of collection.

**COUNT THREE**
**Unjust Enrichment**

141.    Plaintiff incorporates herein the allegations of ¶¶ 1-140 above.

142.    Plaintiff asserts this Count Three for herself and on behalf of the members of the Class.

143.    Angie's List has made numerous representations that new and renewing Angie's List members pay the same "membership fee."

144.    Nevertheless, by way of its automatic renewal authority Angie's List demanded that Plaintiff and members of the Class confer on Angie's List a fee for membership renewal that exceeds the membership fee being charged to enrolling members.

145.    Plaintiff and Class members, in turn, paid Angie's List a renewal fee which exceeded the Membership Fee that Angie's List represented was applicable to all membership payments.

146.    It would be unjust for Angie's List to retain any payment by Plaintiff and members of the Class in excess of the prevailing Membership Fees on the day such payment was rendered.

147.    Accordingly, Angie's List is liable to Plaintiff and members of the Class for the amount by which their payments exceeded the prevailing Membership Fees.

## COUNT FOUR
### Unjust Enrichment

148.  Plaintiff incorporates herein the allegations of ¶¶ 1-147 above.

149.  Plaintiff asserts this Count Four for herself and on behalf of the members of the Subclass.

150.  As detailed above, in 2010 Angie's List instituted a new subscription model in its thirty most mature markets.

151.  Angie's List intentionally failed to notify Plaintiff and members of the Subclass about the substantial change to its subscription offerings, despite having maintained regular e-mail and U.S. mail correspondence with its membership since 2010.

152.  Instead, after adopting this new membership model in its mature markets, Angie's List automatically "renewed" its existing members in the "Angie's List Bundle" membership plan.

153.  Plaintiff and Members of the Subclass had not subscribed to the Angie's List Bundle plan prior to 2010.

154.  Angie's List did not obtain the consent of Plaintiff and members of the Subclass to automatically renew their subscriptions at the premium Angie's List Bundle plan.

155.  Angie's List abused its automatic renewal authority by renewing Plaintiff and members of the Subclass at its most expensive membership plan without notifying its members and obtaining their consent.

156.  Angie's List has made no reference to a "Bundle" plan in its Membership Agreement.

157.    Plaintiff and Subclass members enrolled in Angie's List at a time when the Angie's List service consisted exclusively of home contractor reviews, or consisted almost entirely of such home contractor reviews.

158.    Nevertheless, Angie's List renewed the Subclass members at the premium Bundle plan, such that all Subclass members were automatically charged an additional fee amount for access to all Angie's List offerings in their market.

159.    The conduct of Angie's List with respect to members of the Subclass was inconsistent with Angie's List's own membership policies.

160.    As of 2010, the Angie's List Membership Agreement provided that, "[o]nce a membership is purchased, you will be granted access to the Service for one subscription [i.e., Angie's List, Angie's List Health, Angie's List Classic Car] within a market selected by You. You may purchase access to additional subscriptions within a market ('Additional Lists') on the terms and subject to the conditions set forth below."

161.    In addition, the Angie's List Membership Agreement provided that, "[u]pon purchase of a membership, the initial subscription selected by You is considered Your 'primary' subscription. You may purchase access to additional subscriptions through your membership by using the Additional List feature located on the website."

162.    Subclass members were not provided with the opportunity to "select" a "primary subscription," either upon purchase of a membership or at the time that Angie's List unbundled its subscription options.

163.    Angie's List did not wait to see whether Subclass members opted to "purchase access to additional subscriptions" before renewing those members at the more costly "Bundle" plan.

164.   The Membership Agreement also provided that when members received an offer to access any Angie's List subscription for free, "Angie's List will provide you notice via email prior to renewing the Additional List at the Membership Fee . . . using the . . . payment information on file with Angie's List."

165.   By contrast, when Angie's List sought to charge the Subclass members at a premium rate for access to the newly-created "Bundle" subscription, Angie's List failed to provide email notice prior to automatically renewing the Subclass members using their payment information on file.

166.   As a consequence of Defendant's actions beginning in 2010 to automatically renew Pre-Existing Members at the highest cost Angie's List Bundle membership, Plaintiff and members of the Subclass have been harmed.

167.   It would be unjust for Angie's List to retain the premium fee paid by Plaintiff and the Subclass to Angie's List on account of Angie's List's abuse of its automatic renewal authority and its failure to provide notice and obtain consent for this premium payment.

## COUNT FIVE
### Breach of Contract

168.   Plaintiff incorporates herein the allegations of ¶¶ 1-167 above.

169.   Plaintiff asserts this Count Five for herself and on behalf of the members of the Subclass.

170.   To the extent that the Membership Agreement governed the rights of Angie's List and the Subclass members with respect to Angie's List's unilateral change to those members' subscription plans in 2010, Angie's List breached the Membership Agreement.

171.   The Membership Agreement states that "[t]he terms of such monthly, annual and Additional List membership plans are listed below. Unless such membership plan is cancelled or

27

terminated as provided below, all membership plans will be automatically renewed upon the terms set forth below."

172.   Prior to 2010, Subclass members had subscribed to the "Angie's List" membership plan – which was the only membership plan made available.

173.   The Membership Agreement, even since the 2010 change to Angie's List membership offerings, has made no reference to an "Angie's List Bundle" membership plan.

174.   Nevertheless, after Angie's List changed its subscription offerings in certain markets, it automatically renewed the memberships of Subclass members in those markets at the Membership [Renewal] Fee for the Angie's List Bundle membership plan.

175.   This action was contrary to the language of the Membership Agreement, which permitted Angie's List to automatically renew members only in a membership plan in which they had previously enrolled.

176.   As of 2010, the Angie's List Membership Agreement also provided that, "[o]nce a membership is purchased, you will be granted access to the Service for one subscription [i.e., Angie's List, Angie's List Health, Angie's List Classic Car] within a market selected by You. You may purchase access to additional subscriptions within a market ('Additional Lists') on the terms and subject to the conditions set forth below." (Emphasis added.).

177.   In addition, the Angie's List Membership Agreement provided that, "[u]pon purchase of a membership, the initial subscription selected by You is considered Your 'primary' subscription. You may purchase access to additional subscriptions through your membership by using the Additional List feature located on the website."

178.    Subclass members were not provided with the opportunity to "select" a "primary subscription" upon purchase of a membership.  Such a selection was infeasible because Angie's List offered only a single "Angie's List" subscription prior to 2010.

179.    Subclass members were also not provided with the opportunity to "select" a "primary subscription" at the time that Angie's List changed its business model.

180.    Angie's List did not wait to see whether Subclass members opted to "purchase access to additional subscriptions" before renewing those members at the more costly "Bundle" plan.

181.    Instead, immediately upon unbundling its services in a given market, Angie's List began renewing its Subclass members for the premium Angie's List Bundle membership plan in breach of the Membership Agreement.

182.    Angie's List breached the Membership Agreement as to Plaintiff and Subclass members by automatically renewing their memberships at the Angie's List Bundle membership plan, despite the fact that Plaintiff and Subclass members had not enrolled in "such membership plan."

183.    Angie's List further breached the Membership Agreement as to Plaintiff and Subclass members by failing to provide those Pre-Existing members the opportunity to "select" a "primary subscription," either at the time that they subscribed or at the time that Angie's List changed its subscription model.

184.    Angie's List further breached the Membership Agreement as to Plaintiff and Subclass members by automatically renewing its Pre-Existing Members at the Angie's List Bundle rate where those members had not "purchase[d] access to additional subscriptions" beyond their "primary subscription."

29

185.    Plaintiff and the members of the Subclass have been injured as a direct conse-

quence of Angie's List's breach of contract, to the extent each paid a fee for the "Angie's List

Bundle" membership plan which exceeded the fee for the "Angie's List" subscription to which

they had subscribed, together with interest thereon from the date of the breach.

## COUNT SIX
### Deception - IC § 34-24-3-1

186.    Plaintiff incorporates herein the allegations of ¶¶ 1-185 above.

187.    Plaintiff asserts this Count Six for herself and on behalf of the members of the

Subclass.

188.    Angie's List has misapplied entrusted property – the credit and debit cards of its

members – in a manner that Angie's List knew involved substantial risk of detriment to the own-

ers of the credit cards.

189.    Upon enrollment, Angie's List members were required to provide Angie's List

with information regarding their valid mode of payment, most commonly in the form of credit

card or debit card numbers and expiration dates, in order to enable the automatic renewal of their

memberships.

190.    Angie's List subsequently misapplied the credit cards, debit cards and other pay-

ment accounts belonging to Plaintiff and Subclass members when it charged to those accounts an

automatic "renewal" of the newly-created Angie's List Bundle membership plan without provid-

ing notice to the Pre-Existing Member or obtaining consent of the Pre-Existing Member.

191.    Angie's List knew that this misapplication of the entrusted property involved a

substantial risk of loss to the card owners who would pay unauthorized membership fees and

then would have to expend time and resources to recover those fees.

192. This misapplication of the credit and debit cards belonging to Plaintiff and members of the Subclass constitutes deception in violation of IC § 35-43-5-3. This deception commenced in 2010 and has continued to this day.

193. Plaintiff and Subclass members have suffered a pecuniary loss, in the form of payment of unauthorized membership fees, as a result of the deception carried out by Angie's List.

194. Accordingly, pursuant to IC § 34-24-3-1, Angie's List is liable to Plaintiff and members of the Subclass for, inter alia: an amount that is three times the actual damages incurred by Plaintiff and the Subclass members; the costs of the action; a reasonable attorney's fee; expenses incurred by Plaintiff and Subclass members in order to obtain and recover a judgment against Angie's List; and all other reasonable costs of collection.

195. Plaintiff, by counsel, demands a trial by jury in this action.

WHEREFORE, Plaintiff demands judgment against Angie's List as follows:

A. Determining that this action is brought on behalf of the Class and Pre-Existing Member Subclass alleged above;

B. Awarding to Plaintiff and the Class all damages under Count One arising from Angie's List's breach of its Membership Agreement in charging renewing members a fee that exceeded the Membership Fee for which they had contracted, plus interest from the date of the breach;

C. Awarding to Plaintiff and the Class three times their damages under Count Two arising from Angie's List's deception in automatically renewing Class members' subscriptions at a fee that exceeded the applicable Membership Fee for their respective geographic markets, as well as the costs of the action, a reasonable attor-

ney's fee, expenses incurred by Plaintiff and Class members in order to obtain and recover a judgment against Angie's List, and all other reasonable costs of collection;

D.   Awarding to Plaintiff and the Class all damages under Count Three arising from Angie's List's unjust enrichment by collecting a fee from renewing members that exceeded the Membership Fee which Angie's List had agreed to charge pursuant to its automatic renewal policy;

E.   Awarding to Plaintiff and the Pre-Existing Member Subclass all damages under Count Four arising from Angie's List's unjust enrichment by automatically "renewing" its Pre-Existing Members at the premium Angie's List Bundle membership plan where those members had never subscribed to the Bundle Plan, and where Angie's List failed to provide notice to those members of a change to their membership plan and failed to obtain the consent of those members for such a change;

F.   Awarding to Plaintiff and the Pre-Existing Member Subclass all damages under Count Five arising from Angie's List's breach of its Membership Agreement by: "renewing" its Pre-Existing Members at the premium Angie's List Bundle membership plan where those members had never subscribed to the Bundle Plan;  failing to provide those Pre-Existing Members the opportunity to "select" a "primary subscription";  and charging Pre-Existing Members for the Bundle subscription where those members had not "purchase[d] access to additional subscriptions" beyond their "primary subscription," plus interest from the date of the breach;

G.  Awarding to Plaintiff and the Pre-Existing Member Subclass three times their damages under Count Six arising from Angie's List's deception in misapplying the credit and debit cards of Plaintiff and Subclass members to collect unauthorized Angie's List Bundle membership fees, as well as the costs of the action, a reasonable attorney's fee, expenses incurred by Plaintiff and Class members in order to obtain and recover a judgment against Angie's List, and all other reasonable costs of collection;

H.  Awarding to Plaintiff and the Class and the Subclass such other and further relief as may be just and proper.

Dated: August 14, 2012

Irwin B. Levin
Richard E. Shevitz
Vess A. Miller
COHEN & MALAD, LLP
One Indiana Square
Suite 1400
Indianapolis, Indiana 46204
Phone: 317-636-6481
Fax: 317-636-2593

Mindee J. Reuben
Jeremy S. Spiegel
WEINSTEIN KITCHENOFF & ASHER LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
reuben@wka-law.com
spiegel@wka-law.com
Phone: 215-545-7200
Fax: 215-545-6535

Counsel for Plaintiff and the Proposed Class